WILBUR HERBERT BURNHAM & others *vs*. BOARD OF APPEALS OF GLOUCESTER.

Essex.    April 6, 1955. — September 19, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Zoning.    Permit.    Board of Appeals.    Quasi Judicial Tribunal.*

An amendment of a city's zoning ordinance to the effect that in the single residence districts motels might be constructed and operated by special permit of the board of appeals was not invalid as beyond the authority granted by the zoning enabling statute, G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1, and as amended.  [116]

A provision of a city's zoning ordinance requiring a permit from the board of appeals for the construction and operation of a motel contemplated the granting of a "special permit" by the board under G. L. (Ter. Ed.) c. 40, § 30, paragraph "2," as appearing in St. 1933, c. 269, § 1, and conferred on the board a power which might properly be conferred on it under § 30.  [117]

Provisions of a city's zoning ordinance that in order to grant a special permit for a motel the board of appeals must receive evidence of compliance with the requirements of health, safety and other public authorities and must consider "the effects upon the neighborhood and the city at large," and that in granting the permit the board might impose conditions for the protection of the public, furnished adequate standards for the board's guidance in acting on applications for such permits.  [118]

On the facts, it could not properly be said that a decision of a zoning board of appeals was "arbitrary, capricious and unreasonable" in granting, under authority conferred on it by the zoning ordinance, a special permit for the construction and operation of a motel on a parcel of land located in a "somewhat secluded" seashore area of "unusual scenic beauty and charm" which was predominantly residential in nature and was zoned as a single residence district.  [120]

[1] See G. L. (Ter. Ed.) c. 214, § 19, which is made applicable to appeals under § 1D.

BILL IN EQUITY, filed in the Superior Court on April 20, 1954.

Karl A. Muller and Jane C. Muller were allowed to intervene.

The suit was heard by *Pecce, J.*

*Carlton W. Wonson,* City Solicitor, for the defendant.

*Anthony N. Compagnone,* for the interveners.

*Edward B. Hanify, (John R. Cahill, Jr.,* with him,) for the plaintiffs.

SPALDING, J.   Karl A. and Jane C. Muller (hereinafter called the applicants) applied to the board of appeals of the city of Gloucester (hereinafter called the board) for a permit to build a motel in a single residence district in that city. Their application for a permit was under an amendment to the city's zoning ordinance.   The amendment, which was passed on November 23, 1953, did not rezone any areas, but enlarged the definition of a single residence district so as to include motels.[1]   The amendment defined "motel" as a "structure or structures containing dwelling units of one or more rooms, separated or attached to each other, and intended to be rented for brief periods of time for the accommodation of travellers or tourists . . . ."   Thus the effect of the amendment was that motels may be constructed and operated in any single residence district.

In order to construct and operate a motel a permit to do so must be obtained from the board of appeals which may impose such conditions as it deems necessary for the protection of the public.   The amendment further provides for notice and public hearing, and evidence of compliance by the applicant with the requirements of the departments of public health and public safety, and other agencies concerned.   "No permit [for a motel] shall be granted by the Board of Appeals without considering the effects upon the neighborhood and the City at large."

---

[1] Prior to the amendment "auto trailer camps, overnight cabins, or tourist camps" were permitted in single residence districts in part of the city, but not in the area here involved, and then only after permission granted by the municipal council.   Both before and after the amendment hotels could be constructed and operated in single residence districts if permitted by the board of appeals.

The board complied with all the requirements of the zoning ordinance and on April 5, 1954, rendered a decision granting a permit to the applicants. From the decision of the board the plaintiffs (owners of property in the area involved) appealed to the Superior Court under G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended. The applicants were allowed to intervene. The judge made comprehensive findings of facts which he stated were all of the material facts, and ordered a decree to be entered that the amended ordinance under which the board granted the permit is invalid, that the decision of the board is annulled, and that the permit granted thereunder is invalid. From a decree entered accordingly the board appealed. The evidence is not reported.

The judge found that the purpose for the adoption of the amendment was to further the interests of travellers and tourists as evidenced by the definition of motel in the amendment and that it clearly was not enacted to promote "the health, safety, convenience, morals or welfare of the community." Admittedly, one of the objects of zoning is to protect, so far as possible, property owners in the more restricted districts from activities and uses permitted in the less restricted areas. But complete separation of uses is not always feasible or desirable and it is for this reason that the zoning statutes have permitted a certain amount of flexibility with respect to zoning ordinances and their application. Thus the board of appeals created by § 30 is authorized to "hear and decide requests for special permits" and to grant variances in certain circumstances. Where a local legislative body of a city enacts an ordinance permitting motels to be constructed and operated in a single residence district, as here, can a court say that this is in excess of the authority granted by § 25 of the enabling statute to promote the "health, safety, convenience, morals or welfare of its inhabitants"? We are of opinion that this question must be answered in the negative.

As to the wisdom of such a policy there may be differing opinions. But the fact that the question is debatable does

not empower a court to substitute its judgment for that of the legislative body. *Simon* v. *Needham,* 311 Mass. 560, 564. Zoning has always been treated as a local matter and much weight must be accorded to the judgment of the local legislative body, since it is familiar with local conditions. *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589. *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 557–558. As we said in the *Caires* case, "Every presumption is to be made in favor of the by-law, and its enforcement will not be refused unless it is shown beyond reasonable doubt that it conflicts with the Constitution or the enabling statute" (page 594). We are of opinion that it cannot be said that the amendment here challenged was unreasonable or capricious or beyond the power conferred on the municipal council by the enabling act. Compare *Smith* v. *Board of Appeals of Salem,* 313 Mass. 622.

The authority given to the board by the amendment to grant permits for motels was within the powers which could be conferred on boards of appeals under § 30. The board in this case was granting a special permit and § 30 specifically provides for such permits.[1] For decisions where special permits were involved see *Lambert* v. *Board of Appeals of Lowell,* 295 Mass. 224; *Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273, 280–281; *Carson* v. *Board of Appeals of Lexington,* 321 Mass. 649; *Everpure Ice Manuf. Co. Inc.* v. *Board of Appeals of Lawrence,* 324 Mass. 433; *Sellors* v. *Concord,* 329 Mass. 259, 263–264.

The plaintiffs earnestly argue that the amendment is at variance with our decision in *Smith* v. *Board of Appeals of Fall River,* 319 Mass. 341. The ordinance in that case was struck down as being an evasion of the strict requirements for variances and as giving to the board of appeals what was in effect a roving commission to engage in spot zoning. But

---

[1] That section provides that zoning "ordinances or by-laws may provide that the board may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinances or by-laws in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained" and the board of appeals is empowered to "hear and decide requests for special permits upon which such board is required to pass under such ordinance or by-law."

we are of opinion that that case is not controlling.   The amendment under consideration specifically authorizes motels to be constructed and operated in any district provided permission to do so is obtained from the board.   Therefore the board by granting a permit is not engaged in rezoning an area to permit an excluded use.   Nor is it engaged in varying the terms of the ordinance.

The next question is whether the amendment sets up a sufficient standard to guide the board in granting or withholding permits.   The only standard, other than building and land requirements, is that "No permit shall be granted . . . without considering the effects upon the neighborhood and the City at large."   In a somewhat analogous situation where a town by-law prohibited persons from removing soil, loam, sand, or gravel unless such removal was authorized by the board of selectmen we held that greater particularity was not required.   *Butler* v. *East Bridgewater*, 330 Mass. 33, 36–37.   The degree of certainty with which standards for the exercise of discretion are set up must necessarily depend on the subject matter and the circumstances.   *Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273. *Butler* v. *East Bridgewater*, 330 Mass. 33, 37.   It would have been difficult, if not impossible, to specify in what circumstances permits should be granted and in what circumstances denied.   That would depend on numerous unforeseeable factors.   The board was charged with the quasi judicial duty of considering the effect of the construction of a motel on the neighborhood and the city and to pass upon the application in each instance "under the serious sense of responsibility imposed upon them by their official positions and the delicate character of the duty entrusted to them."   *Butler* v. *East Bridgewater*, 330 Mass. 33, 37. We do not think that greater particularity was required. *Sellors* v. *Concord*, 329 Mass. 259, 263–264.

The judge concluded that the decision of the board in granting the permit was "arbitrary, capricious, and unreasonable."   The nature of judicial review of decisions of boards of appeals has been fully discussed in two recent

decisions and what is said there need not be repeated. *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679. *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 558–560.

The underlying facts found by the judge which were the basis of the foregoing conclusion are these. The lot here involved contains approximately 71,400 square feet of land and is located in the Bass Rocks region of the city, a coastal area of rocks and beaches. The entire area is two and one half miles long and about one half mile wide at its greatest width. "It is somewhat secluded and of unusual scenic beauty and charm." For a considerable distance around the immediate area of the site for the proposed motel there are "substantial, high grade residential properties which are owned and occupied by single families." These properties are "well maintained and represent substantial investments." With slight deviations, the neighborhood is preponderantly residential. The area has been especially attractive as a summer resort and is a "haven for rest and relaxation" during parts of the spring and fall as well as the summer. With the advent of better and through highways during the past ten years, there has been a tendency to convert summer residences into all year round houses.

In the Bass Rocks area there are a beach club, a yacht club, and two private schools. There are two hotels built over fifty years ago, which have been operated in accordance with the use made prior to the enactment of the zoning ordinance. There are a few residents who take in boarders or rent rooms during the summer months. There have never been any motels, tourist courts, or trailer camps in the area. Adjoining the site of the proposed motel is a house operated by the applicants which can accommodate nineteen guests during the summer months. The proposed site is located on two roads, neither of which is a main highway.

With the exceptions noted above, the Bass Rocks area has retained its residential character from 1927 (when the zoning ordinance was passed) down to the time of the 1953

amendment.  The land for which the permit is granted "has no special peculiarity or noteworthy characteristic which distinguishes it from other land in the area."

On these facts was the judge below justified in concluding that the decision of the board was arbitrary and capricious?  We are of opinion that, though there is room for disagreement as to the wisdom of granting the permit, it cannot be said that its decision was the result of whim or caprice or that it permits a use not contemplated by the ordinance.  True, the judge also found that the proposed site was readily adaptable and best suited for the construction of single family residences; that the "highest value of the . . . land and structures thereon will be best maintained by the retention of the residential character of this area"; that the construction and operation of a motel in the area will radically change its residential character, will cause an influx of transients, and will intensify automobile traffic upon narrow roads presently constructed and designed for a secluded area; and that the construction of a motel "could prevent that area from being developed as a high class residential district."  But these are at most conclusions from facts found by the judge or expressions of opinion which are contrary to the established policy of the ordinance that any single residence district is a possible site for a motel.

The decree is reversed and a decree is to be entered stating that the decision of the board did not exceed its authority; that no modification of its decision is required; and that the clerk of the court within thirty days after the entry of the decree send an attested copy thereof to the board of appeals of Gloucester.  *Co-Ray Realty Co. Inc.* v. *Board of Zoning Adjustment of Boston*, 328 Mass. 103, 109.

*So ordered.*