**SPRINT SPECTRUM, L.P., Plaintiff,**

v.

**CITY OF WOBURN, Bryan Melanson, John J. Beauchamp, Anthony M. Imperioso, and Kevin R. McDonough, Defendants.**

**No. 97–12700–JLT.**

United States District Court, D. Massachusetts.

June 11, 1998.

("PCS"). Plaintiff alleges that Defendants, City of Woburn, and City Council Members Bryan Melanson, John J. Beauchamp, Anthony M. Imperioso, and Kevin R. McDonough violated the Federal Telecommunications Act of 1996, (the "TCA"), 47 U.S.C. § 322(c) and state law by denying the plaintiff's application for a special permit to construct a tower necessary for it to deliver PCS services. The defendants claim that the permit application was properly denied. Pending before this court are the parties cross motions for summary judgment.

## I. Background

In 1995, Sprint obtained PCS licenses for Massachusetts and Rhode Island from the Federal Communications Commission. On May 30, 1997, the Mayor of Woburn received a proposal from Sprint regarding the availability of the Whispering Hill water tanks as a site for Sprint's antennae arrays. The Mayor agreed, in writing, to execute a license/lease of the water tank, if Sprint successfully obtained the special permit required by the Town's zoning ordinance.

In August 1997, Sprint Spectrum applied for a special permit with the City Council (the "Council"), to construct the "cell site," for its PCS network on the Whispering Hill water tanks. Following a public hearing on November 18, 1997, the Council denied the application for a special permit. In accord, the Mayor then notified Sprint that their agreement had been canceled.

Alan B. Rubenstein, Rackemann, Sawyer & Brewster, Boston, MA, for Sprint Spectrum, Plaintiff.

Edward S Robertson, Woburn, MA, for City of Woburn, Bryan E. Melanson, John J. Beauchamp, Anthony M. Imperioso, Kevin R. McDonough, Scott D. Galvin, William J. Mulrenan, Timothy A. Dever, Richard A. Crocker, Paul A. Medeiros, Defendants.

Sprint claims that this denial violates § 704 of the TCA, exceeds the Board's authority under M.G.L. c. 40A, and violates Plaintiff's substantive rights created by the TCA under 42 U.S.C. § 1983. Sprint seeks injunctive relief requiring the Board to issue the special permit and declaratory relief discerning the rights and liabilities of the parties.

*Memorandum*

TAURO, Chief Judge.

Plaintiff, Sprint Spectrum L.P., ("Sprint") is a communications venture seeking to provide a national wireless communications network using a new type of digital technology called Personal Communication Services

The defendants claim that the decision was well within their discretionary function, was in accordance with the TCA, and that the plaintiff lacks standing to challenge the action taken.

## II Analysis

### A. Standard of Review

Summary judgment is warranted when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The "material" facts upon which the nonmovant relies to avoid summary judgment must demonstrate a genuine dispute "over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant, however, is not required to make an affirmative showing that there are no material facts in issue. Instead, the movant has to show only an "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, "[o]n issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). The court should not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. Standing

This case hinges not on an interpretation of the FTCA, but on the issue of whether Sprint has standing to sue. The focus of the defendant's motion is that Sprint neither owns, nor has a sufficient property interest in, the locus upon which it wishes to construct its cell site and, therefore, Sprint is not entitled to a special permit and lacks standing to pursue this litigation. The plaintiff claims that it does have standing and, in its memorandum, argues the substantive merits of its TCA claim. Because a finding of no standing would obviate the need to decide the merits of the plaintiff's substantive claims, the court will address the standing issue first. This court further notes that, because there are no issues of material fact regarding the standing issue, it is an issue appropriately determined on summary judgment.

Pursuant to M.G.L. c. 40A, § 1 *et seq.*, the City of Woburn, through its legislative body, the City Council, enacted ordinances to regulate the development of land throughout the city. Section 11.4.2 of the Zoning Ordinance requires applicants for a special permit to submit a "[s]tatement certifying ownership or prospective ownership of the premises involved, or evidence that the applicant has permission of the owner to make such application." The application requires the signatures of both the applicant and the owner if the applicant is not the owner. The Mayor's signature appears on Sprint's application, presumably to represent the owner, the City of Woburn.[1]

It is indisputable that the Mayor has no authority to execute documents purporting to convey an interest in municipal property without the approval of the City Council. *See* Title 2, Article III, Section 2–10 of the 1989 Woburn Municipal Code. Additionally, M.G.L. c. 40, § 15B requires "advice and approval of the State Department of Environmental Protection" when a proposed lease involves the use of real property or equipment involved in the community's water supply.

It is, however, the City's position that the grant of the special permit would, inferentially, have conveyed the City Council's necessary authorization for the lease. The City argues that the lease agreement was subject to City Council approval and grant of authority which could have been expressed by an affirmative vote for a special permit. That vote having failed, it is the City's claim that the Mayor had, and has, no authority to make a lease of municipal property, and, therefore, Sprint lacks standing to bring this

---

1. Apparently, the Mayor thought he was streamlining the process by signing the letter setting forth his intent to negotiate terms and execute documents should the City Council grant the special permit, with the understanding that such a grant would, inferentially, convey the necessary authorization. This court believes that the Mayor was mistaken and that the improper procedure followed by him resulted in standing issues before the court. *See* p. 5 *infra.*

appeal because it has no property interest in the Whispering Hill water tank.

Although there is no case directly on point, the Massachusetts Appeals Court has held that a lease executed by a mayor is not enforceable against the city unless *all* the terms are specifically approved by the city council. *See Salem Sound Development Corporation v. City of Salem,* 26 Mass.App.Ct. 396, 399, 528 N.E.2d 504, 506 (1988). In 1993, the Supreme Judicial Court reaffirmed the principle that, "A town may lease real estate held for public use by action of a committee (or agent) that is duly authorized to do so.... That due authorization, absent any other relevant statute, must come from the town's legislative body." *Cranberry Growers Service, Inc. v. Town of Duxbury,* 415 Mass. 354, 355–56, 613 N.E.2d 105, 107 (1993).

Although it is clear that Sprint currently would have no standing to apply for a special permit, it is unclear whether Sprint ever had standing, or whether it now has standing to appeal the denial. At the heart of this issue is the fact that the Mayor did not have authority to enter into the lease and that the City should have first voted on whether to authorize such lease before hearing Sprint's special permit application. Because this is not how the events unfolded, this court is left with a legal quagmire.

If the Mayor's conditional agreement to enter into the lease was sufficient to convey standing to apply for a special permit, then Sprint may have standing to appeal the denial. Indeed, the plaintiff argues that whether or not the Mayor's agreement was enforceable, and whether or not a lease to use the water tank would have required separate City Council approval, the Mayor's written agreement for a conditional lease was enough under Massachusetts zoning law to give Sprint standing to apply for a special permit. *See Carson v. Bd. Of Appeals of Lexington,* 321 Mass. 649, 652, 75 N.E.2d 116, 117 (1947)(holding that one who has an agreement with the owner to use the land, conditional upon the granting of a special permit, has standing to apply for that special permit). *See also Marinelli v. Bd. of Appeal of*

*the Bldg. Department of the City of Boston,* 275 Mass. 169, 172–73, 175 N.E. 479, 481 (1931)(holding that the fact that an agreement between owner and prospective user is not legally enforceable does not deprive the user of standing to seek a special permit).

Given that Sprint had standing to apply for a special permit, and even assuming Sprint's appeal of the special permit denial is meritorious, the legal question remains whether this court can offer Sprint any relief. Because Sprint no longer has any ownership or authorization to use the property in question, this court is at a loss as to how it could properly, not only order the City Council to issue the special permit, but also order the City to execute a lease of town property. This is properly characterized as a standing problem, because the court cannot offer relief to redress the alleged harm.

The plaintiff argues that, because it had standing to apply for a special permit, the City Council was bound to comply with the requirements of the TCA in reviewing the application. Plaintiff further argues that the TCA provides that "any person adversely affected by a final action ... by a ... local government or any instrumentality therefore that is inconsistent with this subparagraph may ... commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v). Sprint asserts that there is little doubt that it was adversely effected by the denial of the special permit and has, therefore, met the standing requirement under the statute to appeal the City Council's denial of its application.

Plaintiff further argues that its standing to assert a TCA claim does not turn upon whether it retains an interest in the Whispering Hill water tank. This court disagrees. The three-part constitutional test for standing was reiterated by the Supreme Court in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, the plaintiff must have suffered actual (as distinguished from hypothetical) "injury in fact." Second, there must have been a causal connection between the

injury and the conduct complained of. Finally, it must be likely that the injury will be redressed by a favorable decision. *Id.* Although Sprint might meet the first two parts of this standard, the third prong is, at the least, problematic.[2]

Although the Supreme Court in *Lujan* stated that when the plaintiff was the object of government action "there is ordinarily little question ... that a judgment preventing or requiring the action will redress it," this is not an ordinary case. *Id.* at 561–62, 112 S.Ct. 2130. Here, we have a unique situation where this court is empowered to redress the denial of the special permit, but is not empowered to order the lease, an underlying prerequisite to the issuance of the special permit. Like the plaintiffs in *Lujan*, Sprint lacks standing because of insufficient redressability—the City Council would not be bound to execute the lease even if this court ordered them to issue the special permit. In essence, this court cannot enter a judgment that would fully remedy the Plaintiff's alleged injury.[3] And so, this court finds that the plaintiff does not have standing because its claims lack redressability. Accordingly, Defendants' Motion for Summary Judgment is ALLOWED as to all claims and Plaintiff's Motion for Summary Judgment is DENIED.

---

**2.** This court notes that there is also some strength to the argument that the plaintiff suffers only hypothetical injury because denial of the special permit did not adversely affect Sprint since it lacked legal permission to use the Whispering Hill water tanks.

**3.** The plaintiff acknowledges that this court cannot order the City to execute the lease, but nonetheless asks this court to order the City Council to issue the special permit. Such a result could not adequately address Sprint's alleged harm because the special permit would only grant plaintiff permission to build a cell site on the Whispering Hill water tanks—a location no longer legally available to the plaintiff.